_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

**OCT 01 2018**

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                    DEPUTY

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. **MJ18-456** |
| Plaintiff, | |
| v. | COMPLAINT FOR VIOLATIONS |
| KELED ALI, | |
| Defendant. | |

BEFORE, United States Magistrate Judge, James P. Donohue, Seattle, Washington.

The undersigned complainant, Earl A. Wozniak, Special Agent, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being duly sworn states:

## COUNT 1
### (Possession of a Firearm in Furtherance of a Drug Trafficking Crime)

On or about December 8, 2018, at Seattle, within the Western District of Washington, KELED ALI knowingly possessed a firearm, that is, a Smith & Wesson M&P Shield 9mm semi-automatic pistol, bearing serial number HV25087, in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, Maintaining a Drug Involved Premises and Possession of Marijuana with Intent to Distribute, as alleged below in Count 2 and Count 3.

All in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

COMPLAINT – 1
USAO#2018

## COUNT 2
### (Maintaining a Drug Involved Premises)

Beginning in or before October 2017, and continuing through on or about March 8, 2018, at Seattle, within the Western District of Washington, KELED ALI knowingly used, maintained, and leased a place, that is, commercial space located at 5303 Rainier Avenue South, Seattle, Washington, for the purpose distributing marijuana, a substance controlled under Schedule I, Title 21, United States Code, Section 812.

All in violation of Title 21, United States Code, Section 856(a)(1) and (b).

## COUNT 3
### (Possession of Marijuana with Intent to Distribute)

On or about March 8, 2018, at Seattle, within the Western District of Washington, KELED ALI knowingly and intentionally possessed, with intent to distribute, marijuana, a substance controlled under Schedule I, Title 21, United States Code, Section 812.

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D), and Title 18, United States Code, Section 2.

And the complainant further states:

## AFFIANT'S BACKGROUND

I am a Special Agent (SA) with the Bureau of Alcohol Tobacco Firearms and Explosives (ATF) and have been so employed since September 1, 2013.  I am currently assigned to the Seattle, Washington Field Office.

I am a graduate of the Federal Law Enforcement Training Center, where I completed ATF Special Agent Basic Training and the Criminal Investigator Training Program.  Prior to my employment with ATF, I was a Police Officer with the Dallas Police Department, in Dallas, Texas, for three years.  I am a graduate of Marquette University where I received a Bachelor of Science in Accounting in 2010.  I have received training in the recognition, identification and testing of controlled substances as well as in common methods of trafficking in narcotics.  I have participated in surveillance and interdiction operations at known drug locations and have made numerous arrests for

COMPLAINT – 2
USAO#2018

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   drug related crimes.  I have further received training in firearms trafficking and the
2   diversion of legal firearms for unlawful purposes, participated in the investigation of
3   many crimes of violence, including robberies, assaults, and homicides, and made
4   numerous arrests for firearms and violent offenses.  As a result of my training and
5   experience, I have an understanding of the manner in which narcotics are distributed and
6   various roles played by individuals or groups involved in the distribution, along with the
7   unlawful use of firearms during crimes of violence and/or drug trafficking and firearms
8   trafficking.

9          The facts in this affidavit come from my training and experience, and information
10  obtained from other agents, detectives, analysts, and witnesses.  The information outlined
11  below is provided for the limited purpose of establishing probable cause and does not
12  contain all details or all facts of which I am aware related to this investigation.

13                    **<u>STATEMENT OF PROBABLE CAUSE</u>**

14  **A.     The One Stop Marijuana Dispensary.**

15         The One Stop marijuana dispensary, located at 5303 Rainier Avenue South,
16  Seattle, is an illegal, unlicensed marijuana business that was operated by the defendant,
17  Keled Ali.  The ATF and the Seattle Police Department ("SPD") became familiar with
18  the One Stop business because it has been the locus of and/or related to multiple gang-
19  related crimes of violence over the past two years, including a homicide in
20  December 2017 and a drive-by shooting in March 2018.  Because of the violence
21  surrounding the One Stop business, the ATF and SPD conducted further investigation of
22  the business and its operators.

23         On October 28, 2017, an undercover SPD detective ("UC") entered One Stop.
24  The UC smelled the strong odor of marijuana and observed a member's sign-in sheet that
25  was blank.  A black male told the UC that he had to be a "member" to enter the store, and
26  that in order to become a member, a current "documented" member had to vouch for him.
27  The UC then left the store.

28

COMPLAINT – 3
USAO#2018

On December 8, 2017, a customer of One Stop was murdered shortly after he visited the store. The customer, a known gang member, went to One Stop and purchased marijuana at the business. On his way out of the store, rival gang members observed him and followed the customer as he drove away from the business down Rainier Avenue South. The rival gang members fired multiple shots into the customer's car, killing him. The perpetrator of this murder has been charged with Murder in the King County Superior Court.

As part of the investigation of this murder, SPD detectives visited One Stop and requested to review any relevant surveillance video footage. Initially, the detectives were denied entry into the store, but ultimately the individuals inside the business (all of whom refused to provide their names) allowed the detectives inside and provided the detectives with video footage from December 8 and 13, 2017. In turn, the SPD detectives provided me with a copy of the footage.

A review of the surveillance footage shows numerous individuals entering the store and approaching the counter. Several large glass jars containing what appears to be marijuana sit on the counter. The people working at the store can be seen providing the customers with quantities of marijuana over the counter, and collecting money from the customers. The store employees appear to weigh the marijuana before placing it into small plastic sandwich bags and handing them to the customers, who then exit the store. The footage shows an individual I believe to be the defendant, Keled Ali, selling marijuana to customers by weighing it, bagging it in a clear plastic baggie, and accepting money for the marijuana.

On January 26, 2018, ATF Special Agent Hunt ("SA Hunt"), operating in an undercover capacity, entered One Stop. SA Hunt observed a member's sign in sheet in the small entry lounge area. The main store area was located through a second, locked door. Two black males met SA Hunt at the locked door. SA Hunt told them he was looking to purchase marijuana. SA Hunt could smell the strong and distinct odor of marijuana in the store. The black males denied SA Hunt's request to purchase marijuana

1   because SA Hunt was not a member. The males at the store told SA Hunt that he had to

2   have a member of the club vouch for him in order to get his own membership before they

3   would sell marijuana to him.  SA Hunt said he would come back with a member and

4   exited the store.

5         On January 29, 2018, ATF Special Agent Roberts ("SA Roberts"), operating in an

6   undercover capacity, entered One Stop.  The second, locked door to the main business

7   area was open.  SA Roberts saw a black male working at the business and asked to speak

8   with the manager.  The male pointed to the couch in the waiting area, suggesting that

9   SA Roberts sit and wait for the manager's arrival.  The male quickly closed the open

10  door. Shortly thereafter, Keled Ali entered the room and spoke with SA Roberts.  Ali

11  introduced himself as "Lee" and confirmed he was the manager of the business.

12  SA Roberts asked Ali if he could enter the business and purchase a quarter-ounce of

13  marijuana.  Ali said he would not allow SA Roberts to enter the sales floor until he

14  became a "member."  SA Roberts informed Ali that a friend of his told him he could

15  come to the shop to purchase marijuana.  Ali reiterated that SA Roberts had to be a

16  member to purchase marijuana at the store.  Ali said that once SA Robert's friend

17  vouched for him, he would allow SA Roberts to sign up as a member of the dispensary.

18  Ali suggested that SA Roberts bring his friend to the dispensary on a Saturday to

19  complete the membership process.  SA Roberts then exited the business.

20        On February 8, 2018, law enforcement officers conducted physical surveillance at

21  One Stop.  Approximately 30 vehicles came and went from the store.  The drivers and/or

22  passengers of these vehicles entered the store and exited within approximately five

23  minutes, and then departed the area.  Based upon my training and experience, this sort of

24  high volume, short-stay traffic in an area associated with drug dealing is indicative of

25  narcotics transactions.  Many of the individuals who were identified entering the store

26  had lengthy and violent criminal histories.

27        SPD officers conducted a traffic stop of one of the customers who exited One Stop

28  on February 8, 2018, because he was driving with a suspended license.  This individual

COMPLAINT – 5
USAO#2018

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  told the officers that he had just purchased marijuana at One Stop, and showed the

2  marijuana to the officers.  It was contained in a clear plastic sandwich bag.  The customer

3  further stated that he knows One Stop to be an ongoing marijuana dispensary business.

4      On multiple other days during February 2018, ATF agents conducted physical

5  surveillance at One Stop and made observations similar to those described above with

6  respect to the activities of February 8, 2017.

7      On February 21, 2018, agents observed Cooperating Source 5 ("CS-5") arrive at

8  One Stop as the passenger in a vehicle.[1]  CS-5 was observed entering and then leaving

9  One Stop five minutes later.  He reentered the vehicle and it drove away.  Police officers

10  stopped the vehicle to make contact with the driver, who had an outstanding arrest

11  warrant.  Officers spoke with CS-5, who stated that One Stop is a marijuana dispensary

12  and he had just purchased marijuana at the store.  CS-5 showed the officers the

13  marijuana, and stated that the individuals who operated One Stop sold it to him.  The

14  marijuana was packaged in clear plastic baggies.  CS-5 told the officers that in order to

15  purchase marijuana at One Stop, a customer either has to know one of the employees or

16  have someone vouch for him.  CS-5 further stated that he had seen a pistol and a rifle

17  inside of One Stop.

18      On March 6, 2018, individuals at the dispensary, believed to be customers, were

19  targeted in a drive-by shooting which resulted in numerous rounds being fired into the

20  adjoining business suite, which is an immigration support service organization.

21      I have confirmed with the Seattle Police Department, the Seattle City Attorney's

22  Office, and the Washington State Liquor and Cannabis Board that One Stop is not

23  licensed to sell marijuana under the applicable state and local ordinances.  Specifically,

24  although Washington State law requires a license be obtained in order to legally

25  distribute marijuana, neither One Stop nor anyone associated with the business, including

26

27  [1] CS-5 has criminal convictions for Robbery in the Second Degree (two counts), Attempted Robbery, and

28  Manufacture/Delivery of a Controlled Substance (two counts) and is cooperating with law enforcement for financial compensation and consideration on a potential pending criminal charge that has not yet been filed (Unlawful Possession of a Firearm).

COMPLAINT – 6
USAO#2018

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Keled Ali, has a license to distribute or grow marijuana.  As a result, One Stop is

2  operating unlawfully under all applicable federal, State, and local laws.

3        **B.**     **Search of the One Stop Marijuana Dispensary on March 8, 2018.**

4        On March 5, 2018, the Honorable United States Magistrate Judge Brian A.

5  Tsuchida issued a search warrant for the premises of One Stop, authorizing the seizure of

6  evidence related to the offense of Distribution of Marijuana, in violation of Title 21,

7  United States Code, Section 841.  The warrant was executed on March 8, 2018.

8        Agents observed Keled Ali arrive at the store in the morning.  Another black male

9  let Ali inside of the store.  Both Ali and this other person were contacted by law

10  enforcement officers and placed into custody.  The other person had a loaded firearm on

11  his person.

12        Agents then conducted a search of the store.  Agents located a safe inside of the

13  employee lounge area of the store.  Ali identified himself as the "owner" of the store and

14  provided agents with the combination to the safe.  Inside of the safe, agents found a

15  Smith & Wesson M&P Shield 9mm semi-automatic pistol, bearing serial number

16  HV25087, two .45 caliber magazines, and multiple rounds of 9mm and .45 caliber

17  ammunition.  Agents also recovered a total of approximately 3.2 pounds of marijuana in

18  various jars and bags located throughout the store.

19        **C.**     **Interview of Keled Ali on March 8, 2018.**

20        Keled Ali was transported to SPD headquarters for an interview.  Ali was read his

21  *Miranda* rights, waived those rights, and agreed to speak with agents.  During the

22  interview, Ali made the following statements, among others:

23        • Ali stated he is the owner, operator, and sole employee of One Stop. Ali

24          stated he is subletting the premises from another person.

25        • Ali identified the other person arrested at the store (who possessed the

26          firearm) as a "friend" but not an employee of the store.  Ali stated the friend

27          watches the store sometimes in exchange for marijuana.

28

COMPLAINT – 7
USAO#2018

- Ali stated the shop is a "compassion club" that distributes marijuana to "members." Ali said the business is funded by member "donations." According to Ali, the members are permitted to take "however much [marijuana] they're comfortable with" in exchange for their donation. However, Ali acknowledged that a customer would not be permitted to take a pound of marijuana with only a $20 donation, and he generally agreed that there was a relationship between the amount of marijuana provided and the size of the monetary "donation."

- Ali denied having any knowledge of firearms in the store, and said someone else must have left any firearms that were recovered. Ali admitted he was the only person who had access to the safe containing the Smith and Wesson pistol, and provided the combination to law enforcement officers at the scene, which was used to open the safe. Agents clarified a second time during the interview that only Ali had access to the safe, which Ali confirmed. Ali also stated during the interview that customers were not permitted in the lounge area where the safe was stored.

- Ali claimed he was generally the only person who sold marijuana at the store, but stated that there was a close circle of his friends who were allowed to hang out at the shop and provide marijuana to customers if Ali was busy.

- Ali acknowledged having some concern about the shop being robbed, but he denied anyone was at the store for security reasons or that anyone was armed for that reason.

- Ali said he generally pays $1,400 per pound for marijuana, and sells it for $2,200. Ali initially stated he sold about one pound per day, but then said it was closer to one-half pound per day. Ali claimed all of the money went towards his rent of $2,100 per month and/or was reinvested into the store.

COMPLAINT – 8
USAO#2018

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1     •   Ali admitted that he intentionally did not register his store with the State of

2        Washington or seek the requisite license to sell marijuana because he did

3        not want to be taxed or regulated.

4      An analysis of the information Ali provided indicates that One Stop was an

5 extremely profitable business. Ali has stated that on a busy day, One Stop sells

6 marijuana to 200-275 customers. According to Ali, he sold marijuana for $2,200 per

7 pound, which translates to $34.00 per quarter ounce. Using these prices, an estimate of

8 the store's revenue for the period beginning on October 28, 2017 (when the SPD UC

9 visited One Stop), and continuing through the date of the search warrant on March 8,

10 2018, would be as follows:

| Number of Customers | x | Price per 1/4 ounce | = | Daily Gross Revenue | x | 130 Days of Operation Revenue |
|---|---|---|---|---|---|---|
| 50 | x | $ 34.00 | = | $ 1,700.00 | x | $ 221,000.00 |
| 100 | x | $ 34.00 | = | $ 3,400.00 | x | $ 442,000.00 |
| 150 | x | $ 34.00 | = | $ 5,100.00 | x | $ 663,000.00 |
| 200 | x | $ 34.00 | = | $ 6,800.00 | x | $ 884,000.00 |
| 275 | x | $ 34.00 | = | $ 9,350.00 | x | $ 1,215,500.00 |

14      In actuality, this revenue is likely substantially greater because the true market

15 value price per quarter ounce of marijuana is closer to $70.00-$120.00, according to open

16 source Google searches for quoted prices by legally operating marijuana dispensaries in

17 the Seattle area.

18     **D.     Evidence Found on Keled Ali's Smartphone.**

19      During the execution of the search warrant on March 8, 2018, agents seized Ali's

20 smartphone and ultimately searched it pursuant to a federal search warrant. A review of

21 the phone's contents reveals that Ali was indeed the user of the phone. In numerous text

22 and other written communications, the user of the phone identifies himself as Keled Ali,

23 either by using his name (i.e., "this is Keled") or by providing an email address that

24 incorporates the name "Keled Ali."[2]

---

[2] On certain other occasions, it appears that the other person arrested at One Stop (in possession of the firearm) used the phone and also identified himself by name when he did so.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

A review of Ali's communications on the phone revealed numerous communications about him selling marijuana and running the One Stop business. Examples of these communications include:

- Ali frequently agrees to have people come to One Stop and sell them a specific quantity of marijuana. On multiple occasions, there are references to quantities of marijuana such as "grams," "ounces" and "pounds." On other occasions, Ali discusses selling a "P," which I know from training and experience often refers to a pound of marijuana, and "zips," which refers to ounces of marijuana.

- During one text conversation, Ali stated that One Stop had 700-800 "members" and that on a busy day he serves 200-275 customers.

- In another text message, Ali stated that his store was robbed on December 24, 2017, and said, "We'll find the guy."

- Some of Ali's communications discuss him selling marijuana to customers in other states, including shipping orders of marijuana to customers in New York, Philadelphia, and Atlanta. In one text message, Ali referenced an order for two ounces of marijuana from a customer in New York, but stated he only ships quantities of a quarter-pound or more.

- On August 27, 2017, during the following exchange of text messages with an unknown person referred to as "S," Ali discussed his operation of the One Stop business, including the profitability of the business and how he attempts to avoid undercover police officers.

**ALI:** I'm tryin open a 2nd one nd be majority owner of that one

S: How do you open one though without having a license? I'm still confused to your shop regulations lol

**ALI:** I own my name

**ALI:** This shop is best money I ever made but if I get another one that does almost good as this one it's high 6 figure talk

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

S: Good fuxkin shit!

S: Idk what owning your name means lol

**ALI:** Ur name is a business nd state of Washington owns it since u never claimed it..but trust me it's hard to text I'll tell u tonight we could chop it up on the phone but it's kinda deep..but basically I only follow federal law not state..the rec weed spots are federally illegal but medical marijuana isn't

S: Oh ok. So if like an undercover comes to your spot and you sell to them could you get in trouble?

**ALI:** If there under aged nd we don't "sell" we take donations nd u gotta have a membership were a private club so an undercover would have to be someone that knows one of us or one of our members nd finesse his way inside

**ALI:** We turn ppl away all day everyday literally lol some ppl still end up forcing it nd coming back wit ppl that have membership nd gettin on like that

S: Oh so if someone comes and you don't know them y'all just act like it's a smoke shop?

**ALI:** Naw tell them it's a private club nd need membership or ur medical card to come in..we just met wit a doctor couple days ago u really gotta keep this info to ur self nd don't mention it even gimme unless we alone lol but paid her 5k to give 100 ppl that come here there medical..we slowly gonna build files up so we could have proof ppl that come here have there medical nd eventually when we big enough nd have most our ppl wit there medical we really will enforce the rules nd turn ppl away that don't have there medical card nd operate like a real deal medical club.

These communications by Ali, and other similar communications found on his smartphone, illustrate that Ali knew his One Stop business was operating illegally, he knowingly distributed large quantities of marijuana at a substantial profit, and he took actions in an attempt to avoid law enforcement detection of, and to cover up, his illegal activities.

//

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## **CONCLUSION**

Based upon the foregoing and my training and experience, I respectfully submit there is probable cause to believe that KELED ALI committed the offenses set forth above in this Complaint.

Earl A. Wozniak
Special Agent, ATF

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence this _1st_ day of October 2018, the Court hereby finds that there is probable cause to believe the defendant committed the offenses set forth in the Complaint.

JAMES P. DONOHUE
United States Magistrate Judge

COMPLAINT – 12
USAO#2018

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970